IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL V.,[1]

           Plaintiff,

    v.

KILOLO KIJAKAZI, Commissioner of
Social Security,

           Defendant.

Case No. 6:21-cv-01181-HL

**OPINION AND ORDER**

**HALLMAN, U.S. Magistrate Judge.**

    Paul V. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray,* 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.   PLAINTIFF'S APPLICATION**

Plaintiff was born in 1973 and completed high school through a special education program. Tr. 26, 325. He has no past relevant work experience. Tr. 26.

Plaintiff filed his application for SSI on January 22, 2019, alleging disability beginning January 1, 2000. Tr. 203-11. Plaintiff's claim was denied initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ). Tr. 129-32, 140-44. An administrative hearing was held in November 2020, during which Plaintiff amended his

disability onset date to January 22, 2019. Tr. 41. After the hearing, ALJ Mark Triplett issued a written opinion dated December 2, 2020, denying Plaintiff's claim for benefits. Tr. 16-33. The Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) This appeal followed.[2]

## II.   THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari,* 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id*.; *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant

---

[2] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6).

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante,* 262 F.3d at 954 (citations omitted).

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was disabled. Tr. 16-33. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his initial alleged onset date of January 1, 2000. Tr. 21. At step two, the ALJ determined that Plaintiff suffered from the severe impairments of depressive disorder and anxiety disorder. Tr. 22.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a Listing. Tr. 22.

The ALJ then determined Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff retained the ability to perform a full range of work at all exertional levels with the following limitations:

> [Plaintiff] can perform simple, routine tasks that can be learned in 30 days or less, and consistent with a reasoning level of 2. [Plaintiff] can tolerate occasional contact with coworkers, supervisors, and the general public.

Tr. 23.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 26. At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including hand packager, machine packager, and floor waxer. Tr. 27. The ALJ therefore concluded that Plaintiff was not disabled. *Id.*

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical opinion evidence; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) rejecting the lay witness testimony. For the reasons discussed below, this Court finds that the ALJ's evaluation of the record evidence was supported by substantial evidence and is therefore affirmed.

**I.      MEDICAL OPINION EVIDENCE**

Plaintiff first argues that the ALJ improperly evaluated the medical opinion of examining neuropsychologist Peter LeBray, Ph.D. An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996)). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or

other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods,* 32 F.4th at 792.

Dr. LeBray performed a neuropsychological exam to assess Plaintiff's cognitive, affective, and behavioral status and functioning. Tr. 492. Dr. LeBray opined that Plaintiff would do best in a supportive, integrative job setting, and required "extraordinary supervision (support) in even an entry labor job setting." Tr. 496. He assessed mild apraxia, limited auditory memory, and semantic memory issues, and opined that Plaintiff would benefit from a solitary work setting with special supports and supervisor accommodations. Tr. 496-99.

The ALJ found Dr. LeBray's opinion somewhat persuasive. Tr. 25. The Commissioner argues that the RFC, which limits Plaintiff to performing simple, routine tasks with only occasional contact with coworkers, supervisors, and the general public, is largely consistent with Dr. LeBray's opinion. Tr. 23. The Commissioner's argument turns on the contention that the ALJ reasonably construed Dr. LeBray's opinion to mean that Plaintiff would require additional supervisory supports only in more complex or skilled work settings. (Def. Brief, ECF 17 at 14-15).

Here, the ALJ found that Dr. LeBray's comments regarding Plaintiff's limitations "are consistent with the ability to perform simple work" and interpreted Dr. LeBray's note regarding additional supervisory support as merely "ideal." Tr. 25. Contrary to Plaintiff's arguments, the record is somewhat equivocal as to whether Dr. LeBray's opinion imposes absolute functional limitations, as opposed to mere recommendations. At one point in his written opinion, Dr. LeBray indicates that Plaintiff would require "extraordinary supervision (support) in even an entry labor job setting." Tr. 496. At another, Dr. LeBray writes that Plaintiff would "likely need extra time to acquire novel, multi-step hands on tasks and a supportive trainer." Tr. 495. Later,

PAGE 6 – OPINION AND ORDER

Dr. LeBray observes that Plaintiff "may fare best in a supportive, integrative job setting." *Id.* In a section of his opinion labeled "SPECIFIC RECOMMENDATIONS," Dr. LeBray wrote:

> Based on modest intellect and learning, [Plaintiff] will fare best with direct, on-the-job training to acquire new job skills via a supportive trainer or mentor. Simpler, manual tasks are advised … Supportive mentoring (tolerance; encouragement; reminders) is necessary and work settings ideally devoid of coworker or public demands.

Tr. 499.

An ALJ is not required to incorporate mere recommendations into a claimant's RFC. *Valentine v. Comm'r*, 574 F.3d 685, 691 (9th Cir. 2009); *see also Jacob v. Berryhill*, 756 F. Appx. 709, 713 (9th Cir. 2018) (an ALJ need not accommodate recommendations that merely describe "a claimant's ideal work conditions"). Here, while the evidence is susceptible to multiple interpretations, it was reasonable for the ALJ to read portions of Dr. LeBray's opinion as best-case recommendations for ideal work condition, and only partially incorporate them into Plaintiff's RFC. Dr. LeBray's note that Plaintiff requires "extraordinary supervision," for example, was not included in his summary of specific recommendations. Tr. 498-99.

However, Dr. LeBray's specific recommendations pointedly note that "[s]upportive mentoring … is necessary," and the ALJ did not include this limitation in the RFC. Tr. 499. The ALJ was therefore required to provide legally sufficient reasons for rejecting this portion of Dr. LeBray's opinion. *Woods*, 32 F.4th at 787.

Here, the Court finds that the ALJ adequately addressed both the supportability and consistency[3] of Dr. LeBray's mentoring limitation, consistent with the Commissioner's regulations. In his discussion of the medical evidence, the ALJ noted that Plaintiff failed to

---

[3] Plaintiff argues that ALJ erred because he failed to specifically discuss the consistency of Dr. LeBray's opinion with the longitudinal record. As explained herein, however, the ALJ's analysis clearly contrasts Dr. LeBray's opinion with the other record evidence and thus constitutes a proper consistency analysis. *See* 20 C.F.R. § 404.1520c(b)(2).

complete specific symptom rating inventories during his evaluation with Dr. LeBray, which negatively impacted the supportability of Dr. LeBray's opinion. Tr. 25; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (failure to fully participate in a consultative examination undermines a claim for disability). The ALJ also observed that the opinion of examining psychologist Douglas Symthe, Ph.D., supported the ALJ's RFC, with no mentoring or supervisory requirements, as did the opinion of consultative examiner Scott Kaper, Ph.D. Tr. 25-26. Dr. Kaper summarized Dr. LeBray's examination findings and identified no supervisory or mentoring requirements based on Dr. LeBray's examination report. Tr. 99-105. The ALJ found the reports of Dr. Kaper and Dr. Smythe persuasive, and Plaintiff does not contest this finding. *Warre v. Comm'r*, 439 F.3d at 1005 n. 3 (the Court may rely on information cited by a medical source whom "the ALJ clearly credited").

The ALJ also credited the opinion of Plaintiff's treating mental health counselor, Lisa Parsons, who found that Plaintiff could be polite with the public, interact with others, and handle "simple, routine tasks." Tr. 26, 819-20. While Ms. Parsons noted that Plaintiff would have difficulties performing complex tasks, she did not indicate any functional limitations that would require mentoring or supervision to enable Plaintiff to perform tasks at the unskilled level of work. *Id.*

Plaintiff argues on reply that the Commissioner presents only an impermissible post-hoc analysis of the record to support the ALJ's evaluation of Dr. LeBray's opinion. The Court disagrees. In his written opinion, the ALJ cited to specific record evidence to justify his rejection of Dr. LeBray's mentoring requirement. The ALJ's analysis constitutes a reasonable assessment of the consistency and supportability of Dr. LeBray's opinion in light of the entire medical record, which includes opinions of treating and examining sources that the ALJ found

persuasive. For these reasons, the ALJ's evaluation and interpretation of Dr. LeBray's opinion was supported by substantial evidence and therefore must be affirmed. *Woods*, 32 F.4th at 787.

## II. SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff also argues that the ALJ improperly rejected his subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). At the administrative hearing, Plaintiff testified that he was unable to work primarily due to his mental symptoms and limitations related to depression and anxiety, including problems concentrating, anger management problems, and emotional lability.

The ALJ found Plaintiff's testimony unpersuasive. Tr. 23-25. The ALJ first noted that Plaintiff's statements regarding his mental symptoms and limitations were incompatible with the medical evidence. *Id.* The ALJ may consider objective medical evidence when assessing a claimant's testimony and may discount a claimant's statements if medical opinion evidence contradicts the claimant's subjective testimony. 20 C.F.R. § 416.929(c)(2); *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ noted that Plaintiff's anger management problems and emotional lability appeared to improve with treatment. Tr. 23. Specifically, the ALJ acknowledged evidence that Plaintiff's symptoms improved with anti-depressant medications such that by February 2020, Plaintiff's treatment provider reported that he was "[m]anaging well" on medication and found counseling "very beneficial." Tr. 24-25, 275, 678. Plaintiff's improvement appeared to continue throughout the relevant period, with Plaintiff's mental health provider noting in September 2020 that Plaintiff's depression and anxiety were well controlled. Tr. 25, 790. While the ALJ noted that Plaintiff's mental health conditions constitute severe impairments, this evidence of improvement with respect to

PAGE 9 – OPINION AND ORDER

Plaintiff's mental health conditions supports the ALJ's finding that Plaintiff's testimony was unpersuasive to the extent that it conflicted with the RFC. 20 C.F.R. § 416.929(c)(2).

As a second reason for finding Plaintiff's statements unpersuasive, the ALJ next determined that Plaintiff's testimony regarding his disabling limitations was contradicted by his level of activity during the relevant period. Tr. 25. An ALJ may discount a claimant's testimony when her activities "are incompatible with the severity of the symptoms alleged." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, the ALJ noted that Plaintiff was able to volunteer for 30 hours per week sorting donations for a thrift store; to work as a delivery driver for five months; and to perform yard work and "help[] people move." Tr. 25, 45-46, 276, 497, 618. Further, Plaintiff obtained his driver's license during the relevant period and was independent in his self-care, cooking, shopping, and household chores. Tr. 24, 44. The ALJ reasonably determined that these activities undermined Plaintiff's allegations that severe limitations, including trouble concentrating, prevented him from working. *Ghanim*, 763 F.3d at 1165.

As a third reason for rejecting Plaintiff's testimony, the ALJ noted that Plaintiff's difficulties in finding and sustaining work activity were attributable to his prior felony conviction. Tr. 25. The ALJ may disregard a claimant's testimony if the claimant does not work for reasons other than their alleged impairments. *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010). Here, Plaintiff reported to multiple treatment providers that his criminal history was consistently a barrier to employment. Tr. 25, 45, 272, 313, 523, 791. Because a finding of disability must be based on a medically determinable impairment, not a claimant's non-medical barriers to employment, the ALJ reasonably considered Plaintiff's statements regarding his employability in light of his criminal record. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). On this

record, the ALJ provided at least three legally sufficient reasons to support his evaluation of Plaintiff's testimony. *Garrison*, 759 F.3d at 1017. Because these reasons were supported by substantial evidence, the ALJ's findings must be affirmed.

### III.    LAY WITNESS TESTIMONY

Plaintiff argues, finally, that the ALJ erred because he rejected lay statements from Vocational Rehabilitation ("VR") without comment or explanation. (Pl. Brief, ECF 15 at 18). The ALJ need only provide germane reasons for rejecting a lay witness's testimony. *Valentine*, 574 F.3d at 694. Here, VR records indicate that Plaintiff engaged in VR services in May 2019 and underwent a Community-Based Work Assessment. Tr. 276-309. The VR records show that Plaintiff regularly showed signs of irritation and aggression towards others and required opportunities to calm down as needed. Tr. 280.

Contrary to Plaintiff's allegation that the ALJ rejected the VR testimony without comment, the ALJ summarized an exhibit from Vocational Rehabilitation in his written decision, stating that the VR records "indicate [Plaintiff] needed to work on anger management skills" but that once Plaintiff engaged in appropriate treatment, "he developed good coping skills." Tr. 24. As discussed above, the ALJ properly found that Plaintiff's issues with emotional dysregulation improved with treatment. Tr. 26, 820 (note from Ms. Parsons stating that Plaintiff "has made significant progress on managing his anger"). On this record, the ALJ clearly discussed the evidence from Vocational Rehabilitation and provided a germane reason for rejecting any limitation related to anger management based on those records. *Valentine*, 574 F.3d at 694. The ALJ's evaluation of the lay testimony was supported by substantial evidence and is therefore affirmed.

### CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**.

PAGE 11 – OPINION AND ORDER

**IT IS SO ORDERED.**

DATED this 13th day of September, 2022.

_____
ANDREW HALLMAN
United States Magistrate Judge